600 So.2d 745 (1992)
STATE of Louisiana, Appellee,
v.
Jason Mandell SMITH, Appellant.
No. 23501-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
*747 Hunter, Scott, Blue, Johnson & Ross by Louis G. Scott, Monroe, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Jerry L. Jones, Dist. Atty., Madeleine M. Slaughter, Asst. Dist. Atty., Monroe, for appellee.
Before SEXTON, HIGHTOWER and VICTORY, JJ.
SEXTON, Judge.
The defendant, Jason Mandell Smith, was charged with two counts of aggravated rape, in violation of LSA-R.S. 14:42, and two counts of aggravated burglary, in violation of LSA-R.S. 14:60. The state amended one of the aggravated rape charges to attempted aggravated rape and the amended charge was severed from the original indictment. Defendant was tried by a jury and convicted as charged on the remaining three original charges. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the aggravated rape charge. On the aggravated burglary convictions, defendant was sentenced to 30 years and 15 years at hard labor. The trial court ordered the three sentences to be served consecutively. On appeal, the defendant asserts three assignments of error; that the trial court erred in denying his motions for severance and for a new trial and that the sentences imposed are excessive. A fourth assignment of error, alleging insufficient evidence to support one of the aggravated burglary convictions, has not been briefed and will therefore be deemed abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA 2-12.4. Finding none of the remaining assignments of error to have merit, we affirm defendant's convictions and sentences.
On May 19, 1990, at approximately 1:30 a.m., victim J.K. heard her screen door squeak. Expecting her boyfriend, J.K. opened the door to find the defendant, who forced his way inside. The defendant began striking J.K. in the face with his fists and then picked up an iron and struck her in the head. After severely beating J.K., the defendant raped her. The defendant then cut J.K.'s telephone cord with a pocketknife, took at least $100 from her purse, and departed. This incident resulted in defendant's conviction for aggravated rape and the first aggravated burglary conviction.
On June 3, 1990, at approximately 3:00 a.m., the second victim, T.P., awoke to find the defendant in her home. The defendant threw T.P. to the floor, began striking her with his fists, cut her face with a knife, and put his hand into her vagina. T.P.'s husband, who had been asleep in another room, was awakened by his wife's screams and chased the defendant out of the house. This incident resulted in defendant's other aggravated burglary conviction.

MOTION TO SEVER
By this assignment of error, defendant argues that the trial court erred in refusing to grant his motion to sever. Specifically, defendant argues that he was unduly prejudiced by the trial of the May 19 aggravated rape and aggravated burglary charges together with the June 3 aggravated burglary charge. Implicit in defendant's argument is his concession that the May 19 aggravated rape and aggravated burglary charges were properly tried together. We note that the trial court ordered that the attempted aggravated rape charge of June 3 be severed from the other three counts.
Two or more offenses may be charged in the same indictment in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or forming parts of a common scheme, provided that the offenses joined must be triable by the same mode of trial. LSA-C.Cr.P. Art. 493.
In the instant case, the two criminal episodes are of the same or similar character. Each crime occurred at a similar time, in a similar manner, and in the same neighborhood. *748 Testimony revealed that the two crime scenes are approximately six to seven blocks apart. In each case, the crimes occurred during the early morning hours of a weekend some two weeks apart. In each case, the defendant gained unauthorized entry to the victim's home, threw the victim to the ground, and began to beat her. Although T.P. was not raped as J.K. was, but only sexually battered, it may be inferred that this was due to the presence of T.P.'s husband and not due to any intent on the part of the defendant.
Further, the punishment for both aggravated rape and aggravated burglary is necessarily confinement at hard labor. LSA-R.S. 14:42, 14:60. Accordingly, the mode of trial, a 12-member jury, 10 of whom must concur to render a verdict, is the same. LSA-C.Cr.P. Art. 782. The offenses were properly charged in the same indictment under LSA-C.Cr.P. Art. 493.
An accused charged in the same indictment with two or more offenses pursuant to LSA-C.Cr.P. Art. 493 may nevertheless apply for severance of the offenses pursuant to LSA-C.Cr.P. Art. 495.1, which provides:
Art. 495.1. Severance of offenses
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
A defendant has a heavy burden of proof when he alleges prejudicial joinder of offenses. State v. Machon, 410 So.2d 1065 (La.1982); State v. Gray, 556 So.2d 661 (La.App.2d Cir.1990). Motions to sever under LSA-C.Cr.P. Art. 495.1 are addressed to the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984); State v. Gray, supra.
A severance is not mandated simply because the respective offenses would not be admissible at separate trials if the defendant is not prejudiced by the joinder. State v. Celestine, supra; State v. Baker, 535 So.2d 861 (La.App.2d Cir.1988).
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980); State v. Gray, supra. A severance need not be granted if prejudice may effectively be avoided by other safeguards. State v. Celestine, supra; State v. Gray, supra.
In the instant case, we find no indication that the jury was confused by the various counts or was unable to segregate the various charges and evidence. The evidence against the defendant was not complex and was presented in an orderly fashion, allowing the jury to segregate the charges and the evidence. The majority of the witnesses testified to either the May 19 crimes or the June 3 crime, but not both. The trial court specifically instructed the jury that it was to consider each of the three counts individually and was to render a separate verdict as to each count. The jury was given and returned separate verdict forms as to each count. Although defendant argues that the number of responsive verdicts for both aggravated rape (eight responsive verdicts) and aggravated burglary (nine responsive verdicts) possibly confused the jury, we note that defendant was charged with both aggravated rape and aggravated burglary for the May 19 crimes. Defendant has implicitly conceded that the aggravated rape and aggravated burglary of May 19 were properly joined. As there were no additional responsive verdicts added by allowing the joinder of the June 3 aggravated battery, defendant's argument that the jury was thereby confused by the additional responsive verdicts is without merit.
*749 Finally, although the defendant, in his appellate brief, argues that he intended to testify regarding the June 3 offense, but not regarding the May 19 offenses, this intention was not made known to the trial court. There is thus no record evidence, merely the unsupported allegations in defendant's brief, that the failure to sever confounded the presentation of his defenses. Under these circumstances, we are unable to find that the trial court abused its discretion in denying defendant's motion to sever. This assignment of error is without merit.

MOTION FOR NEW TRIAL
By this assignment of error, defendant argues that the trial court erred in denying his motion for new trial. That motion alleged that the state had failed to disclose to the defendant, during discovery, all exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, defendant argues that the state failed to inform him of the results of a photographic lineup viewed by victim T.P. in which she failed to identify the defendant. Defendant apparently did not discover the results of this lineup until the day of trial.
In arguing this point, defendant contends that the circumstance is exacerbated by the fact that T.P. did not identify the defendant as her attacker when viewing him in a physical lineup, and further argues that prior to this physical lineup, T.P. was shown two photographic lineups, but failed to identify the defendant in either of these.
T.P. was actually shown two photographic lineups. In the first one, the defendant's picture was not included as defendant was not yet a suspect in the case. At that initial photographic lineup, T.P. identified a photograph as the individual she "believed" committed the offense. Later, when the defendant had become a suspect, T.P. was shown a second photographic lineup which included the defendant. T.P. could not identify any of the persons in this second lineup. As T.P. did not identify any of the photographs, this lineup was not preserved by law enforcement officials and neither the defendant nor the prosecutor learned of this evidence until the date of trial.
It should be pointed out that defendant's statement in brief that T.P. did not identify the defendant as her attacker at the physical lineup is utterly wrong. T.P. specifically testified at trial that as soon as she entered the viewing area for the lineup, she immediately recognized the defendant as the number two person in the lineup, but had been cautioned by police not to make any identification, if one could be made, until the lineup procedures were complete. She stoutly maintained this position on cross-examination. Also, she appears to have had no difficulty identifying the defendant as her attacker in the courtroom.
The state is under no duty to investigate in order to obtain exculpatory evidence. Rather, it merely has a duty to provide a defendant with the exculpatory information which is within its possession, custody, control, or knowledge. LSA-C.Cr.P. Arts. 718, 719; State v. Edwards, 420 So.2d 663 (La.1982); State v. Hodge, 457 So.2d 152 (La.App.2d Cir.1984), writ denied, 459 So.2d 545 (La.1984).
The ultimate test on appeal is whether the undisclosed evidence creates a reasonable doubt as to the defendant's guilt which otherwise did not exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Johnson, 464 So.2d 1363 (La.1985).
Although the lineup itself could not be presented, the defendant fully explored the nature of the photographic lineups, T.P.'s failure to identify the defendant's photograph in the second photographic lineup, and any possible inconsistencies in the identification of her assailant by T.P.
Thus, the exculpatory material was placed before the jury. The finder of fact had an opportunity to contrast the alleged inconsistencies with T.P.'s clear identification of the defendant at the physical lineup and in court. Under these circumstances, the defendant has failed to show how he was prejudiced. The evidence allegedly beneficial to him was considered by the jury. The defendant was therefore not deprived *750 of his right to a fair trial. See State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981). This assignment of error is without merit.

EXCESSIVE SENTENCE
By his remaining assignment of error, defendant claims that the sentences imposed upon him are excessive. On the aggravated rape conviction, defendant was sentenced to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant was sentenced to 30 and 15 years at hard labor on the two aggravated burglary convictions. All three sentences were ordered to be served consecutively.
The trial court clearly complied with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1. The trial court noted that the defendant is 26 years old, single, and the father of one child. The defendant has a ninth grade education and is unemployed.
The trial court then noted defendant's lengthy criminal history, which reveals a juvenile record and, as an adult, one prior felony and numerous misdemeanor convictions. The defendant's juvenile record involves a nondenominated offense which resulted in the defendant being placed on probation. His probation was later revoked and the defendant was committed to LTI. As an adult, the defendant has a 1987 felony conviction for attempted simple burglary. That conviction was the result of a plea bargain. The defendant had been originally charged with aggravated burglary for a crime factually similar to the instant offenses. The defendant was sentenced to six years at hard labor and was paroled only two months before the instant May 19, 1990 crime. The pre-sentence investigation report reveals that defendant's parole has since been revoked.
The defendant's lengthy misdemeanor record reveals the following convictions: two counts of theft in 1982; two counts of aggravated battery in 1982; shoplifting in 1982; shoplifting and simple battery in 1982; theft by shoplifting in 1983; trespassing in 1983; indecent exposure in 1983; shoplifting in 1983; theft by shoplifting in 1983; aggravated battery in 1985; and aggravated assault and two counts of trespass in 1985. The defendant also has a pending charge of purse snatching plus the attempted aggravated rape charge which was severed from the instant offenses.
The trial court had no discretion but to sentence the defendant to the mandatory sentence of life imprisonment on the aggravated rape conviction. The defendant received the maximum 30-year hard labor sentence for the May 19 aggravated burglary and 15 years at hard labor for the June 3 aggravated burglary. The sentences were ordered to be served consecutively.
As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. State v. Madison, 535 So.2d 1024 (La.App.2d Cir.1988). In light of the defendant's lengthy criminal history and the heinous nature of the May 19 offense, involving not only the rape, but the brutal beating rendered to J.K., we conclude that the trial court appropriately imposed the maximum sentence for that offense.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. Art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Derry, 516 So.2d 1284 (La.App.2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988).
We note that the June 3 aggravated burglary was unrelated to the May 19 offenses and was properly ordered to be served consecutively. LSA-C.Cr.P. Art. 883. Further, we find no abuse of discretion in the trial court's ordering the May 19 offenses to likewise be served consecutively. Again, in light of the defendant's lengthy criminal history and the seriousness *751 of the crimes, which caused both physical and emotional damage to the victims, we find ample support for the consecutive sentences.
LSA-C.Cr.P. Art. 930.8 C requires that, at the time of sentencing, the trial court shall inform the defendant of the three-year prescriptive period in which to apply for post-conviction relief. The record does not show that the trial court so informed the defendant. The trial court is directed to inform this defendant and all future convicted defendants of the provisions of Art. 930.8. The trial court is directed to send appropriate written notice to this defendant within ten (10) days of the rendition of this opinion and to file written proof that defendant received said notice in the record of these proceedings.

CONCLUSION
As we find that none of the defendant's assignments of error have merit, we affirm the defendant's convictions and sentences.
AFFIRMED.